Syllabus.

---

## GEORGE W. RODGERS ET AL. *v.* JOHN D. KLINE.

1. **LIBEL.** *Defence. Intention of publisher.*

    Where the language of a publication is libellous, it is no defence to an action by the party aggrieved, that the publisher did not so intend it.

2. **SAME.** *Meaning of word. Instruction. Duty of jury.*

    In an action for libel, based upon a publication containing but one obnoxious word, it is error for the court to instruct the jury that the publication is libellous, unless the obnoxious word has but one meaning, and that is libellous, or unless a libellous signification is necessarily affixed to it by the context. But when such word has two distinct popular meanings, and its meaning, as used, is not fixed by the context, the sense in which it is employed in the alleged libel must be determined by the jury, and not by the court. And, in reaching their determination, the jury should consider all the circumstances of the case, — the various ordinary and popular meanings of the word; the connection in which it is used; and the object and purpose of the author, as developed by the whole publication.

3. **SAME.** *Meaning of word. Technical or popular.*

    In construing writings intended for popular reading, and having no relation to any art or profession, a word which does not itself import that it is used in a technical sense is to be understood according to its popular signification.

4. **SAME.** *Meaning of "malpractice." Instruction. Province of jury.*

    In an action for libel against the author of a publication characterizing a physician's treatment of a particular case as "malpractice," it is error for the court to instruct the jury that the publication, unless true, is actionable, if it be clear that the word "malpractice" is not used in a technical sense. But as this word has several ordinary and popular meanings, one of which only is libellous, it should be left to the jury, in such case, to determine the sense in which it is used in the publication upon which the action is based.

5. **SAME.** *Special charge of incompetency. When actionable, and when not.*

    Words spoken or written of one in his special character as the occupant of an office, or the follower of any profession or trade for pecuniary gain, are not actionable because they charge such person with want of skill, or ignorance, or neglect, in a particular transaction, unless the charge be of such gross want of skill, or ignorance, as to imply a general unfitness for his calling.

6. **SAME.** *Use of word. Court to decide. Evidence.*

    Where an action for libel is based upon the use of a certain word in a publication, and it is clear, from a consideration of the whole publication, that such word was used in its popular and ordinary meaning, and not in a technical sense, the court should so decide, and no evidence of its technical meaning should be permitted to go to the jury.

7. **SAME.** *Popular meaning of word. Testimony of expert. Irregularity.*

    In an action for libel, it is irregular for the court to permit an expert to state in

evidence the ordinary and popular meanings of a word charged to be libellous; but, where the meanings thus given are correct, this court will not reverse the judgment because of such irregularity.

8. SAME. *Meanings of words. How determined.*
   The court is supposed to know the popular and ordinary meanings of all English words; but if the judge doubts as to such meaning of a particular word, it is proper for him to refer to· a standard dictionary for information. In cases where the court is authorized to construe the words, the judge may expound their meanings in his charges to the jury. But when a word has several meanings, and the jury are entitled to decide its significance as used, the court should state, in the charges to the jury, these several meanings, and leave it to them to adopt that in which, in their judgment, the word was used.

9. PRACTICE. *Introduction of evidence. Amendment of pleading.*
   Where a party introduces evidence material to his case, but not admissible under his pleading, and his adversary, making no objection, adduces evidence in rebuttal, but the instructions of the court exclude all evidence not covered by the pleadings, it is then in time for the party introducing such evidence to ask leave to amend his pleading; and, there being no ground of surprise in such case, the court should allow the amendment, under sects. 621 and 623 of the Code of 1871, in futherance of justice.

10. LIBEL. *Charge of gross ignorance. Particular case.*
    A publication which charges gross ignorance or misconduct of a physician, in the treatment of a particular case, is libellous if untrue.

11. SAME. *Defence. Reports in circulation. Evidence.*
    The defendant in an action for libel is not entitled to prove that, at the time the publication charged to be libellous was made, reports were in circulation in a certain county that the plaintiff had been guilty of the conduct charged in the publication. Such reports, to be admissible in evidence under any of the authorities, must have been in circulation prior to the publication, and must have been generally current. Many authorities deny the admissibility of such evidence at all. As to which class of cases should be followed it is not now decided, as either would exclude the reports here in question.

ERROR to the Circuit Court of Warren County.

Hon. U. M. YOUNG, Judge.

This is an action for libel brought by John D. Kline against the publishers of the Vicksburg *Herald*, a newspaper published in the city of Vicksburg. The plaintiff claimed damages to the amount of $25,000. The jury rendered a verdict in his favor for $500, and to the judgment thereon the defendants sued out a writ of error. The language charged to be libellous, the assignments of error in the trial, and the other

material facts of the case are stated in the opinion of the court.

*L. W. Magruder*, for the plaintiffs in error.

1. As to whether any given words are actionable is a question of fact, and not of law, and should be left to the jury. 2 Greenl. on Ev., sect. 411. In this case, the declaration set forth the libellous character of the words, not only predicated of the injury to the plaintiff, but also of their tendency to create a breach of the peace under the statute. Code 1871, sect. 1973. The declaration stands as a whole, and presents, as a part of the issue, this statutory allegation ; and when the court undertook to declare the words libellous, it violated the express provision of the statute.

2. The decision of the court that the word " malpractice " was libellous involves the proposition that its use, in the connection employed, obviously imputed a want of that degree of professional skill, learning, and care from which there can be inferred, without doubt, as a general consequence, that the professional character of the plaintiff was damaged, and from which the law presumes an injury. In order to justify the court in this ruling, it is not enough that the words are susceptible of that construction: it is essential that they must *necessarily* convey such a meaning ; that they must exclude all mistakes, all errors of practice, which, while they indicate an imperfection in the science, are nevertheless consistent with learning and skill ; they must exclude the notion of such errors and imperfections as are incident to the practice of the man of ordinary learning, and which distinguish him from the physician of great skill and learning. Otherwise it could not be an inference, without doubt, that the effect of such language is injurious.

The most obvious meaning of the word " malpractice " is that given by Webster,— " contrary to established rules." It does not imply gross ignorance, or general ignorance, but comprehends every mistake of judgment, and every error of ignorance, however slight. A charge of professional miscon-

duct in a particular case, from which injury can be inferred beyond doubt, must import a degree of ignorance or want of skill inconsistent with general learning in that profession.

If the words charged to be libellous are of doubtful meaning, or are susceptible of being used in more than one sense, — one of which is libellous, and the other not, — then it is for the jury to determine the sense in which they are used in the particular case. *Lucas* v. *Nichols*, 7 Jones, 35; *Simmons* v. *Morse*, 6 Jones, 6; 16 N. Y. 371. As to whether any given question is one of law or fact, see Proff. on Jury Trial, sect. 260; *Sessions* v. *Newport*, 23 Vt. 9; 9 Bing. 423.

3. The court erred in granting the seventh instruction for the plaintiff below. It assumes that the words employed implied a particular degree of ignorance and neglect, and that such degree was gross ignorance or gross negligence. " Malpractice," when taken by itself, no more implies a degree of ignorance than the word " negligence " a degree of carelessness. In law, it is true, a physician is only liable civilly for acts of malpractice evincing a degree of ordinary ignorance, and criminally liable for acts of gross misconduct and ignorance resulting in death. So, negligence and care have their ordinary meaning; but it is according to their *degrees* that, for them, the law holds one liable, — as, *slight, ordinary*, and *gross;* and this is precisely the law of liability for a physician. Because there is a civil and criminal liability in law for certain degrees of malpractice, it does not follow that these degrees are meant when the word itself is used, no more than, when one is charged with negligence, it follows that culpable negligence is meant, to which the law attaches a liability. The ordinary meaning of words, and the degree of such meaning as the law makes culpable, are two different things. The degrees of malpractice recognized by *all* the decisions are the three degrees of *slight, ordinary*, and *gross*, and these are determinable by the surroundings and circumstances of each case. It is placed precisely as any other question of skill and care. 28 Mo. 97;

*Sear* v. *Prentice*, 8 East, 347; *Gallagher* v. *Thompson*, Wright, 4, 66; *McCandless* v. *McWha*, 22 Pa. 261; *Leighton* v. *Sargent*, 7 Fost. 460; *McMillen* v. *Hewitt* (reported at length), Elwell's Med. Jur. 161; *Landon* v. *Humphrey*, 9 Conn. 209; Shear. & Redf. on Neg., sect. 434 *et seq.*

*Miller & Hirsh*, on the same side.

1. The court below erred in refusing to permit the defendants to amend their pleas. Code 1871, sect. 621. No injustice could have been done to the plaintiff by allowing the amendment, for the record shows that he was not surprised by the evidence offered by the defendants; but, on the contrary, he seemed to have anticipated it, and was prepared with rebutting testimony. The refusal of the amendment worked great injustice to the defendants, when taken in connection with the fifth instruction for the plaintiff, which confined the jury, as to the defence of justification, to a consideration of the particular acts of malpractice pleaded.

2. The third instruction for the plaintiff below was erroneous. It assumes, that if the jury believed that the plaintiff was in charge of Miss Chisholm's case, then they must find that the language published in the Vicksburg *Herald* must necessarily have referred to the plaintiff, in spite of the fact that another physician, during the plaintiff's absence, took charge of the case. Under the plea of the general issue, it devolved upon the plaintiff to show the applicability of the alleged libellous words to himself. It was not stated in the publication, that the acts of malpractice referred to occurred at any particular time, nor while plaintiff was in charge of the case.

*A. B. Pittman*, for the defendant in error.

1. Whether words whose meaning and application are ascertained are actionable *per se*, is a question of law, and not of fact; and is to be determined by the court, and not by the jury. See authorities cited on next point.

2. Words spoken of another, touching his trade, calling, or profession, whose necessary tendency is injurious to him in his particular trade, calling, or profession, are always action-

able *per se*.   Words which are not so on their face, become
so by proper averment and proof.   Town. on Slander, sects.
181, 182 ; *Small* v. *Catlin*, 3 Wend. 291 ; *Mott* v. *Comstock*, 7
Cow. 654 ; *Ostrom* v. *Calkins*, 5 Wend. 623 ; *Elri* v. *Ferris*,
Anth. 23 ; *Kinney* v. *Nash*, 3 Conn. 177 ; *Prettyman* v.
*Shockley*, 4 Harr. 112 ; *Barnes* v. *Trundy*, 31 Me. 321.

   "Malpractice" involves ignorance, negligence, unskilful-
ness, or moral turpitude, in such degrees as are inconsistent
with the character of a trustworthy physician.   This is both
the popular and legal meaning, when applied to a physician.
It is not true that malpractice may be predicated of every mis-
take of a learned, skilful, and attentive physician.   A physician
guilty of malpractice is necessarily guilty of such ignorance,
or of such unskilfulness, or of such negligence, as is regarded
as culpable and immoral, and renders him liable to a civil or
criminal prosecution.   The mistakes which are attributable to
the imperfections of humanity are not due to departures from
established rules and methods of the profession, not inconsist-
ent with learning, integrity, fidelity, and diligence, and are not
understood as constituting malpractice, either in common par-
lance or according to the meaning of the term as used in law-
books.   Therefore I say, that words imputing malpractice to
a physician are actionable *per se*, because they import damage.
They are more certainly so in this case, because the malpractice
is referred to as the proximate cause of death.

   3. The definition of "malpractice" given in evidence by
Dr. Whitehead was correct, and could not have injured the
defendants, even if the testimony was improperly admitted.

   4. The court properly excluded the evidence of previous
rumors, offered by the defendants.   Town. on Slander, sects.
114, 210, and note 1014.   They did not offer to prove that
they had heard the rumors, nor did they plead that defence, if
it was such.

   5. The action of the court in refusing to allow the defendants
to amend their pleas after the case had gone to the jury and
the instructions had been read, was clearly correct.   To have

allowed the amendment at that time, would have been a most flagrant abuse of judicial discretion. If the pleadings had been amended after the evidence was closed, it would have deprived the plaintiff of the opportunity to introduce proof upon the new issues. Moreover, the plea of justification was admitted to show the excuse that the defendants had published merely what they knew to be true. Therefore, the application to amend, so as to show as an excuse a state of facts different from that which they had pleaded as constituting their excuse, could not commend itself to the favorable consideration of the court, nor to a just judicial discretion.

GEORGE, C. J., delivered the opinion of the court.

The language alleged to be libellous is as follows : " The accident of Miss Chisholm's death, caused by malpractice, and not by her slight wound, adds tenfold to the deplorable consequences."

This simple sentence is found in an article of a column in length, published in the Vicksburg *Herald* in May, 1877. The article is headed, " Rash Southerners and Philanthropic Northerners," and contains but one other reference to Miss Chisholm's death, in which it is stated to have been " accidental, from gangrene." It is clear, from a perusal of the whole article, that it was no part of the object and purpose of the writer to criticise the treatment, medical or otherwise, which she received in her last illness. No mention is made of the name of any person concerned in the treatment, nor any allusion made to the fact that she had a medical attendant, unless such allusion is made in the language above quoted. The manifest object and purpose of the article, as well as its full scope, was to soften the unfavorable effect produced in the public mind by the transaction then known as the " Chisholm massacre," which had been greatly intensified by the death of Miss Chisholm, resulting from the effects of a gunshot wound alleged to have been inflicted by the rioters. To this end, the article alludes to the rash and excitable

nature of the Southern people in their condemnation and punishment of great crimes which appear to have been deliberately planned and executed.

The writer, whilst condemning the proceedings of the mob, states, as some palliation for its unlawful action, the belief of the people of Kemper County that its intended and premeditated victims were the deliberate murderers of a highly esteemed citizen of that county, and ascribes the death of Miss Chisholm to accident, and not to the deliberate purpose of the actors in the riot; suggesting as a fact, in the language above quoted, that it was caused by malpractice, resulting in gangrene. It is clear, therefore, that the writer had no wish to reflect upon the plaintiff's professional standing, or to bring him into disrepute.

But the absence of this intent or purpose does not, *per se,* exonerate the publishers of the article from responsibility, if, in fact, such language was used in it as would inflict an illegal injury on the plaintiff; for the injury to him would be all the same whether it was the result of design on the part of the defendants, or of their carelessness and negligence.

There is no exception taken to the ruling of the court below which holds that the language used is legally capable of such application to the plaintiff as to constitute a libel on him, and we are not, therefore, called on to express any opinion on that subject.

The assignments of error raise several other questions for our determination, which we will now proceed to consider. The court charged the jury, in the third instruction for the plaintiff, that if it were established that the plaintiff was the attending physician on Miss Chisholm, and the defendants published the language above quoted, it was actionable, or constituted a libel on the plaintiff, if not justified by proof of its truth.

The force of the alleged libel seems to consist in the use of the word "malpractice." In its technical sense, as applied to prosecutions, either civil or criminal, against a physician

for unskilful treatment of a patient under his charge, it would be actionable. But there is nothing in the article of which this language is a part, which suggests that the word was used in a technical, rather than a popular, sense. On the contrary, it is clear, from a consideration of the whole article and its nature and character, that it was not used in its technical sense; for it is an undoubted rule, that in writings intended for popular reading, and having no relation to any art or profession, a word which does not itself import that it is used in a technical sense is to have its popular signification. *Monongahela Nav. Co.* v. *Coons*, 6 Watts & S. 114.

It was, therefore, error for the court to give this charge, unless the word "malpractice," in its ordinary signification, has but one meaning, and that meaning is libellous; or unless a libellous signification is necessarily affixed to it by the context. We have seen that there was nothing in the context, nothing in the scope and purpose of the article, to give it a libellous meaning; but rather, if the context is to be considered as fixing beyond controversy its meaning, the contrary sense would be implied. Neither has the word " malpractice," in its ordinary acceptation, necessarily a libellous meaning. It has several meanings: one of them, implying illegal or immoral conduct, is libellous; and the others — bad or evil practice, practice which is not good, practice which is contrary to established rules — are not libellous.

When the language used is ambiguous, or a word has two distinct meanings, the sense in which it is used in the alleged libel must be determined by the jury, and not by the court. In performing this duty, the jury are to consider all the circumstances of the case, — the various ordinary and popular meanings of the word; the connection in which it is used; and also the object and purpose of the author in the writing in which it is found, so far as that object and purpose may be developed to the reader by a perusal of the whole article.

. The seventh and eighth charges given at the instance of the plaintiff are also erroneous, for the reason that in them the

court construed the meaning of the word " malpractice," instead of leaving its meaning to be ascertained by the jury. These charges assumed that the word " malpractice " meant gross ignorance and unskilfulness, which is only one of its ordinary meanings.

It is settled that words spoken or written of one in his special character as the occupant of an office, or the follower of any profession or trade from which he derives pecuniary gain, though generally not actionable, become so if they impute to such person such ignorance or incapacity as unfits him for the proper exercise of his calling.   Town. on Slander, sect. 194.   But it is also settled that it is not actionable to charge such a person with want of skill, or ignorance, or neglect, in a particular transaction, done in his special character, unless the charge be of such gross want of skill or ignorance as would imply a general unfitness for his calling.

In *Camp* v. *Martin*, 23 Conn. 56, the slanderous words spoken of a physician were, " If Dr. C. [the plaintiff] had continued to treat Sarah, she would have been in her grave before this time ; his treatment of her was rascally."

After verdict, the defendant moved in arrest of judgment, on the ground that the words were not actionable ; and the court said : " To charge a physician merely with mismanagement of a particular case is not of itself actionable.   Such a charge implies nothing more than ignorance or unskilfulness in that case, and does not materially affect his reputation as it respects his general competency to practise his profession. The most eminent physician may mistake the symptoms or treatment of a particular case, without detracting from his professional skill and learning."   And the court sustained the motion to arrest the judgment.

To charge a professional man with neglect or unskilfulness in the management or treatment of a particular case, is no more than to impute to him the mistakes and errors incident to fallible human nature ; and as no man can rightfully claim infallibility, the imputation of the contrary can work no legal

56 MISS. — 52

damage or injury to him, however much it may wound his vanity or offend his sensibilities. But as the word " malpractice," in its ordinary and popular use, may mean illegal and immoral conduct, and may therefore impute such gross ignorance and unskilfulness as unfits the party for his employment, it should have been submitted to the jury to determine the sense in which it was used.

It is also assigned for error, that the court permitted Dr. Whitehead to state to the jury the ordinary and popular, as also the technical, meaning of the word " malpractice." This witness, in the first part of his examination, stated to the jury the several popular and ordinary meanings of the word. The introduction of this evidence was irregular practice ; but, as the definitions given by the witness were correct, we cannot see that the defendants were injured, and we would not, therefore, reverse for that cause alone. The court is supposed to know the popular and ordinary meaning of all English words. In case the court doubted as to the meaning of a particular word, it would be proper for the judge to refer to a standard dictionary and inform himself. In cases in which the court is authorized to construe the words, the judge is authorized, in his charge to the jury, to expound their true meanings. And in cases like this, where a word is ambiguous, and the jury are entitled to decide in which of its several meanings it is used, it would be proper for the court to state, in the charge to the jury, these meanings, and leave it to them to adopt that in which, in their judgment, it was used by the defendant. The meaning of an English word, not a technical term and used as such, is not to be made known to the jury by an examination of witnesses before them. This rule, however, does not apply where a known English word or phrase has acquired a local meaning different from its ordinary acceptation, nor where it has acquired a peculiar meaning in a particular science, art, or trade, or among a particular sect, and where it seems to have been used in such local or peculiar sense. 1 Greenl. on Ev., sect. 295.

The further examination of Dr. Whitehead as to the technical·· meaning··of the word ·" malpractice " was erroneous, under the circumstances·of this case.   We have seen that the word was not used in the alleged libel in a technical sense, and that it was the duty of the court so to decide ; and it was therefore improper to allow evidence of this technical meaning ·to go·to the jury.   And this error is the more injurious to the defendants, as Dr. Whitehead was allowed to state to the jury that the technical meaning was also its legal and correct meaning, and that he did not think it had a different meaning from its technical meaning, in common parlance.

It is also assigned for error, that the court refused to allow the defendants, at the close of the evidence, and after the charges asked had been passed on by the court, to amend their pleas of justification.

The record shows, that, during the trial, the defendants ·introduced evidence tending to show improper treatment of Miss Chisholm's wounds, in other particulars than those speci-.fied in their pleas as they then stood, and that the plaintiff introduced rebutting evidence to this new matter, and this evidence on both sides was introduced without objection. In giving the charges, however, the court instructed the jury to consider nothing in justification except the matters set up in the pleas of the·defendants ; and thereupon the defendants asked leave to amend their pleas so as to embrace the matter which had thus been·brought out without objection. This leave was refused, and the defendants excepted.

Under sects. 621 and 623 of the Code, this action of the court was erroneous.   The court had the power to allow the amendment at any time before verdict, and the defendants made the application to amend at the earliest moment after the objection had been made which the amendment was intended to obviate.   There was no pretext that it would operate as a surprise on the adverse party, as the investiga-·tion had proceeded just as if the amendment had been pre-viously made.   Amendments should be liberally allowed, in

the furtherance of justice, and in this instance we can perceive no good reason for refusing the application of the defendants.

The next assignment of error questions the propriety of the action of the court in refusing the fifth instruction asked by the defendants. This instruction was properly refused, for its failure to state that the language would be actionable also if it charged gross ignorance or misconduct in the treatment of that particular case. With this amendment to it, it would be unobjectionable.

No error was committed in excluding from the jury the evidence offered, "that at the time the publication was made, reports were in circulation in Kemper County, where Miss Chisholm died, that the plaintiff had been guilty of malpractice in her case."

The authorities differ as to whether a defendant may in any case, even in mitigation of damages only, prove that, *prior* to the publication, a general report or suspicion existed that the plaintiff had committed the act. Town. on Slander, sect. 411.

The High Court of Errors and Appeals, in *Binns* v. *Stokes*, 27 Miss. 239, said: "If the defendant had merely uttered or published a report which had been in circulation in regard to the plaintiff, and which had been generally credited by the community, the defendant having nothing to do with its origination, then such evidence would have been entirely competent." The rule as stated by Townshend, and as recognized in the case last cited, requires that the report should have been in circulation prior to the publication, and also that it should have been generally current. The offer here comes up to neither of these requirements, and we regard both as essential. The report should have been generally current; for it seems clear that a mere idle rumor, circulating amongst a few persons only, who may be the personal enemies of the party, should not be made the basis of a libellous charge in a newspaper against a person, who must be treated, from the very

nature of this defence, as innocent of it; nor can such report be any excuse or palliation for publishing such a charge, unless it be shown to have been in existence before the publication, for without this restriction it could not be known but that the publication may itself be the origin of the report which is relied upon to justify it. At all events, it could not have been known to, or have influenced, the publisher unless it had been in existence prior to the publication.

When such a report is admitted at all, it must be remembered it is admitted, not as justification, but only in mitigation of damages. Whether such evidence should be allowed at all, is, as we have seen, denied by many cases. It is not necessary for us to determine that question now, as the evidence offered was incompetent, when tested by the rules adopted in the cases which hold it admissible.

Judgment reversed, new trial granted, and cause remanded.