CAMERON BROTHERS *v.* POSEY.

No. 41246          October 26, 1959          115 So. 2d 138

*C. W. Sullivan, Carl E. Barry, Jr.,* Hattiesburg, for appellant.

434

*James Finch, Herbert R. Ginsberg,* Hattiesburg, for appellee.

Lee, J.

John F. Posey, the operator of Po-Boy Feed & Seed Store near the City of Hattiesburg, sued Cameron Brothers, a local corporation with its domicile in that city, to recover damages for a false and slanderous charge of theft against him, alleged to have been made by a representative of the company. The jury found a verdict for the plaintiff in the sum of $2,500, and from the judgment entered thereon, the corporation appealed.

The alleged wrong arose out of the following circumstances: On January 1, 1957, Twilley Currie, a colored truck driver of the company, erroneously delivered a bill of groceries, intended for Popa's Grocery, to Po-Boy Feed & Seed Store. Included in the bill were twelve one-pound cans of Luzianne Coffee. Posey was not present at the time, but was out on his egg route;

and his clerk, Mrs. Earline Meadows, receipted for the delivery. When Posey returned he observed the unordered groceries. The next morning he called the company and advised of the mistake in delivery. When Currie, the driver, came for the merchandise and inquired about the coffee, Posey informed him that there was no coffee in the lot, and none had been delivered. Although the company had the receipted order, including the coffee, signed by Mrs. Meadows, inasmuch as Posey advised that no coffee had been delivered, two representatives of the company, Jack Swinney and Archie B. Davis, in the afternoon of January 2, 1957, went to the store to investigate the matter. At this stage, the sharply disputed controversy developed.

Posey testified in effect that there were a number of customers in the store when these two representatives arrived; that, as soon as possible, he asked if he could wait on them, and Swinney said that he wanted to ask about the coffee that was left at the store; that the witness told them that no coffee had been left in his store because, if so, it would still have been sitting there when the negro came, and that he so told the driver; that, if Swinney wanted to search the store, he could do so, but that Swinney replied that it would do no good; that he told Swinney not to come in front of his customers and accuse him of stealing coffee, and that Swinney said "you can take it like you want to;" that Swinney looked on the shelf, saw some Luzianne coffee, and asked where it was purchased, and that he told him from Plyant Brothers in Purvis, Mississippi; that Swinney asked him to produce a bill, showing where it was purchased; that he started to get the bill when suddenly it occurred to him that he was under no obligation to show it to Swinney, and that he told the man to get out of his store; that Swinney then said "You are open for business and I will do as I please;" and that the witness asked Swinney if he was going to take the Negro's word instead

of that of the witness, and Swinney said he would, with the further statement that he would give ten dollars worth of coffee any time to learn a man.

Mrs. Earline Meadows testified that she checked the list as the truck driver was calling off the items; however, she did not see any coffee and when she asked the driver if it was included, he said that he "set it back there;" but that actually he did not deliver any coffee, although she signed the bill showing that it had been delivered.

J. C. Herrington, Wilbur D. Pierce and M. A. Rainey substantially corroborated Posey's version. Pierce said that Posey asked Swinney if he was insinuating that he stole the coffee, and Swinney replied "you can take it or leave it just like it is." Rainey was asked if he heard Swinney accuse Posey of stealing the coffee, and his reply was, "Well, no, but he said you can take it any way you want to."

Archie B. Davis' evidence was to the effect that, by the time they had finished explaining the purpose of their inquiry, Posey became very angry and said they were accusing him of stealing. He testified that he did not hear Swinney say that he would give ten dollars worth of coffee to find out a man, or that when something was said about insinuating that Posey stole the coffee, Swinney said you can take it either way you want to.

Jack Swinney said that their object in going to the store was to find out about the shortage as they always charged the driver in such instances; that he could understand that a person would not wish to turn over coffee to a colored driver because that article of merchandise at that time was commanding a high price; that he did not make any statement with reference to Posey's stealing coffee; and that he did not say he would give ten dollars worth of coffee to find out about a man. He further testified that, when Posey was say-

ing that they had accused him of taking the coffee, he told Posey that nobody was accusing him of taking anything.

The appellants strenuously argue that the court erred in giving to the plaintiff the two following instructions:

"The court instructs the jury for the plaintiff that you are the sole judges of the damages to be allowed the plaintiff, and that for the words spoken you must give such an amount that will fully compensate the plaintiff for his damages, if any, that you find from the evidence that plaintiff sustained, and you may take into consideration the disgrace and humiliation to the plaintiff that resulted as a proximate result of the cause of the speaking of the words complained of, and in considering the damage sustained by the plaintiff, you will take into consideration the fact that the plaintiff is entitled to such amount as will fully compensate him."

"The court instructs the jury for the plaintiff that the words complained of, if spoken, was slanderous per se, and that no special damage must be proven by the plaintiff to entitle him to recover at your hands, because when one is slandered and the slanderous words are spoken are slanderous per se, the law presumes that damages directly and proximately flow from the false speaking of the words."

It is seen, at a glance, that the first mentioned instruction is peremptory in effect. "For the words spoken" the jury was charged to return a verdict for such sum as would compensate plaintiff for such damages as he may have sustained.

In Travis v. Hunt, 224 Miss. 193, 79 So. 2d 734, there was a direct charge of theft, and the court held that to charge a person with theft or larceny is actionable per se. In such a case, the existence of both malice and the resulting general damage is presumed. See authorities there cited.

Defamatory statements, to be actionable, do not have to be charged in a direct, positive and open manner. Indirect imputations and insinuations may suffice. 33 Am. Jur., Libel and Slander, Section 9, page 43. A distinction seems to be made between oral and written imputations. Section 6, page 41, thereof, says in part: ''It is frequently stated broadly that defamatory words, when spoken, are ordinarily not actionable per se unless they impute a crime, but that written or printed words are actionable when they subject the person to. disgrace, ridicule, odium or contempt in the estimation of his friends and acquaintances or the public.''

On the question as to when the court determines whether the language is actionable or whether the issue should be submitted to the jury, Section 294 of the above text, at pages 277 and 278, says: ''Where the language complained of is clear and unambiguous, it is the duty of the court to determine whether it is actionable either per se (in itself) or per quod (only on allegation and proof of special damage), but where it is ambiguous, of doubtful import, or susceptible of two or more interpretations, its actionability must ordinarily be decided by the jury under appropriate instructions from the court. So, while it rests with the court to decide whether the publication in question is capable of the meaning given it in the innuendo, it is the duty of the jury to determine whether the meaning so ascribed is the correct one—that is to say, the one understood by the reader or auditor.''

53 C. J. S., Libel and Slander, Section 223, page 335, gives the rule as follows: ''The defamatory character of the words complained of is for the jury if the language is susceptible of two meanings, one defamatory and the other innocent; but if the language is unambiguous the question is for the court. The court determines whether the language is capable of the meaning ascribed to it, and the jury determine whether the language had the meaning ascribed to it.''

On the particular point here in question, this Court in the early case of Rodgers v. Kline, 56 Miss. 808, said: "When the language used is ambiguous, or a word has two distinct meanings, the sense in which it is used in the alleged libel must be determined by the jury, and not by the court. In performing this duty, the jury are to consider all the circumstances of the case,—the various ordinary and popular meanings of the word; the connection in which it is used; and also the object and purpose of the author in the writing in which it is found, so far as that object and purpose may be developed to the reader by a perusal of the whole article."

If Posey, under the circumstances in this case, took the coffee and appropriated it to his own use, he could appropriately be charged with the crime of larceny. Bishop's Criminal Law, 9th Ed. Vol. 2, page 622. According to the plaintiff's version, Posey told Swinney that he *should not accuse him of stealing coffee, and Swinney replied that he would do as he pleased or "you can take it either way you want to", or words to that effect, and that he would give ten dollars worth of coffee to learn a man.* The statement was somewhat ambiguous. It was not a direct charge of larceny, although it was susceptible of that meaning. *It was, therefore, error for the court to charge the jury peremptorily that "the words complained of, if spoken, were slanderous per se." Under the authorities cited above it was for the jury to say whether or not Swinney in fact charged Posey with the crime of larceny.*

For the error in giving the two instructions in question, the cause is *reversed and remanded* for a *new trial.*

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.