766 So.2d 20 (2000)
Dr. John McFADDEN, Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY and Roger Lawson, Appellees.
No. 1998-CA-01244-COA.
Court of Appeals of Mississippi.
May 23, 2000.
Certiorari Denied August 24, 2000.
*21 Jim Waide, David Chandler, Victor Israel Fleitas, Tupelo, Martin D. Crump, Hamilton, Attorneys for Appellant.
Lauren J. Hutchins, David L. Sanders, Columbus, Attorneys for Appellees.
EN BANC.

ON MOTION FOR REHEARING
McMILLIN, C.J., for the Court:
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn and the following is substituted. This matter comes before this Court after the trial court granted the defendants a directed verdict at the close of the plaintiff's case. The plaintiff, John W. McFadden, was seeking actual and punitive damages from the defendants, Roger Lawson and his employer, United States Fidelity and Guaranty Company, for common law slander and malicious interference with business relationship based upon certain statements allegedly made by Lawson maligning McFadden's ability as a medical doctor. We conclude that the trial court was correct to direct a verdict as to the malicious interference with business relationship claim but that the court erred in directing a defendant's verdict on the slander claim. Therefore, we affirm in part and reverse and remand in part.

I.

Facts
¶ 2. Judy Gilliland was injured in a motor vehicle accident. U.S.F. & G. Company provided liability coverage for the driver of the vehicle shown to be at fault in the accident, and Lawson was assigned as the insurance adjuster to attempt to settle Gilliland's claim for her injuries. In the course of a telephone conversation between Gilliland and Lawson concerning her medical condition, Gilliland reported that she was being treated by McFadden for her injuries. According to Gilliland, Lawson referred to McFadden by a derogatory appellation and told her that, if she persisted in seeing McFadden for treatment, Lawson was unwilling to work further with her on settling her claim. There was some initial uncertainty on Gilliland's part as to whether Lawson referred to McFadden as a "crackpot" or as a "quack," but at trial Gilliland testified that she recalled Lawson using both terms on different occasions.
¶ 3. Gilliland testified that, though she strongly disagreed with Lawson's contemptuous view of McFadden's professional abilities, she felt constrained to seek alternate medical treatment since she was looking to U.S.F. & G. for payment of those costs and she understood Lawson's statements to mean that she could not expect any consideration for expenses relating to care by McFadden. Ultimately, Gilliland was seen by another physician in regard to her complaints arising out of the *22 accident. Gilliland testified that she informed McFadden of Lawson's comments when she telephoned to cancel a pending appointment and thereby end her course of treatment.
¶ 4. McFadden commenced this action claiming two alternate theories of recovery: the first being an action for slander, alleging that the use of the term "crackpot" or "quack," when made in the context of discussing McFadden's suitability as a treating physician for Gilliland's injuries, was slanderous per se as tending to diminish his esteem as a physician or to excite adverse or derogatory feelings against him in his professional capacity. Secondly, McFadden alleged that Lawson's derogatory remarks, in combination with threats to be uncooperative in settling Gilliland's claim against his employer's insured if she persisted in seeking treatment from McFadden, constituted a tortious interference with business relationship.
¶ 5. McFadden, prior to commencement of trial, abandoned any claim that he suffered an economic loss due to Lawson's alleged defamatory remarks; thereby confining his claim for damages for slander to (a) his alleged loss of reputation with Gilliland and those persons to whom Gilliland related Lawson's statements, and (b) his emotional distress occasioned by learning of Lawson's statements. McFadden continued to pursue his separate claim for tortious interference with business relationship, but it is clear from the record that this separate claim was limited to the loss of Gilliland as a patient for treatment of those injuries specific to the accident since McFadden neither alleged nor offered any evidence that his professional practice was harmed or damaged in any additional ways.
¶ 6. McFadden called only two witnesses during his case-in-chief. They were Gilliland and McFadden himself. After McFadden rested, the trial court granted the defendants' motion for a directed verdict. As to the allegedly slanderous remarks made by Lawson in calling McFadden a "crackpot" and a "quack," the trial court, for reasons not entirely apparent, characterized the use of those words as "offhand remarks" and concluded that, even assuming that such statements were made, McFadden's proof did not "give rise to sufficient evidence that would sustain a jury's verdict in this case on a slander issue." No further rationale was offered by the trial court for its decision to grant a directed verdict on the slander claim.
¶ 7. As to the claim for tortious interference with business relationship, the trial court observed that actual damage was an essential element of that claim and concluded that McFadden had offered no evidence of any actual damages suffered to an existing or anticipated business relationship as a result of Lawson's statements to Gilliland.
¶ 8. McFadden has appealed the trial court's decision to this Court, asking that we reverse and remand for a new trial as to both causes of action. As we have already indicated, we conclude that McFadden's appeal on the slander claim has merit, but that the tortious interference claim was properly removed from the jury's consideration because of a fundamental failure in the plaintiff's proof going to damages.

II.

The First Issue: Tortious Interference with Business Relationship
¶ 9. We see no particular need to belabor this issue to any great extent. Mississippi case law has recognized this tort and prior decisions indicate that there are four essential elements to establishing such a claim. The plaintiff must demonstrate by a preponderance of the evidence:
(a) that the acts complained of were intentional and wilful;
(b) that the acts complained of were calculated to damage the plaintiff in his lawful business;

*23 (c) that the acts were done for the unlawful purpose of causing economic loss without right or justifiable cause; and
(d) that actual damage and loss resulted from the acts.
MBF Corp. v. Century Business Communications, Inc., 663 So.2d 595, 598 (Miss. 1995); Freeman v. Huseman Oil Int'l, Inc., 717 So.2d 742 (¶ 6) (Miss.1998).
¶ 10. When reviewing a trial judge's decision to grant a directed verdict, an appellate court is required to consider the evidence in the light most favorable to the party against whom the verdict was directed. MBF Corp., 663 So.2d at 598; Harris v. Shields, 568 So.2d 269, 275 (Miss.1990). Viewing the evidence in that light, it is arguably correct that McFadden presented sufficient evidence as to the first three elements of his claim to avoid a directed verdict. However, beyond the fact that Gilliland called McFadden and canceled a pending appointment after her conversation with Lawson, there is no evidence in the record of any actual damage suffered by McFadden in his capacity as a practicing physician arising out of Lawson's actions. While evidence of damages in such situations need not be presented with absolute precision, it is incumbent upon the plaintiff to offer some proof that would bear on the question of the extent of his damage in order for the jury to intelligently deliberate on the question. McFadden presented no evidence as to his anticipated economic gain from Gilliland's canceled visit. He offered no evidence of his expected course of treatment of Gilliland extending beyond the next visit had she remained under his care, nor did he show the anticipated revenue that such a course of treatment would have produced. On the record now before us, an award of damages in any amount for this alleged tortious activity by Lawson would necessarily be based on the rankest speculation and conjecture, and it is a fundamental precept in our law that damages based on nothing more than that may not be permitted to stand. Par Industries, Inc. v. Target Container Co., 708 So.2d 44(¶ 16) (Miss.1998). Therefore, to permit the case to go to the jury on this claim would have been an act of futility.
¶ 11. By his failure to present any credible evidence upon which the jury could deliberate to arrive at an informed estimation of McFadden's actual damages arising out of Lawson's alleged efforts to interfere with his business relationship with Gilliland, we conclude that McFadden failed as a matter of law to prove one of the essential elements of his claim. Because the absence of proof of any actual damage raises an issue of law as to the viability of McFadden's claim rather than an issue of fact, the trial court was acting within the proper scope of its duties when it directed a verdict for the defendants after the plaintiff had rested. Bank of Shaw v. Posey, 573 So.2d 1355, 1360-61 (Miss. 1990).

III.

The Second Issue: Lawson's Alleged Slanderous Remarks
¶ 12. The tort of defaming a person's character or reputation through the spoken word is actionable under the common law doctrine of slander. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 111 (5th ed.1984). While defamatory statements concerning another person may cause actual damage to that person, it is not necessary in all instances for a slander victim to demonstrate any such actual damage in order to have his good name and reputation vindicated in an action at law, since the law presumes that one who has been defamed in certain ways has necessarily suffered damage arising from his wounded feelings and diminished reputation. McCrory Corp. v. Istre, 252 Miss. 679, 691, 173 So.2d 640, 646 (1965); Travis v. Hunt, 224 Miss. 193, 196, 79 So.2d 734, 735 (1955); CHARLES T. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 116 (1935). Such damages, referred to as "general damages" in the context of *24 defamation law, are to be distinguished from an award of mere nominal damages. They may, upon a showing of slander per se, be awarded without any proof going to damages upon the theory that the jury, by its own understanding, is competent to calculate an appropriate compensation for the injury to the plaintiff's feelings and reputation that would naturally flow from the publication of such derogatory remarks. Doherty v. L.B. Price Mercantile Co., 132 Miss. 39, 95 So. 790, 790-91 (1923); Hubbard v. Rutledge, 52 Miss. 581 (1876); CHARLES T. McCORMICK, supra, § 116.
¶ 13. As to slanderous remarks, the exception to the requirement of proof of actual damages (often called "special damages" in discussion of defamation cases), is limited to four general areas of defamation. They include (a) words imputing criminal activity to the plaintiff, (b) the imputation that the plaintiff has a loathsome disease, (c) any attack on the capabilities of a plaintiff in his trade or profession (so long, only, as the trade or profession is a legal one), and (d) accusations of unchastity made concerning a female plaintiff. W.T. Farley, Inc. v. Bufkin, 159 Miss. 350, 132 So. 86, 87 (1931).
¶ 14. It is clear, based on McFadden's evidence viewed in the light most favorable to his position, that Lawson's remarks that McFadden was a "crackpot" and a "quack," in the context of the conversation in which they were offered, were necessarily intended to disparage McFadden's abilities as a practicing physician and would tend to hold McFadden up to ridicule and embarrassment in the specific area of his professional life. The American Heritage Dictionary defines a "quack" as "[a]n untrained person who pretends to be a physician and dispenses medical advice and treatment." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1116 (3d ed.1993). That same work defines a "crackpot" as "[a]n eccentric person, especially one with bizarre ideas." THE AMERICAN HERITAGE COLLEGE DICTIONARY 322 (3d ed.1993). While the term "crackpot" does not necessarily speak to a person's abilities in the medical profession, we have little doubt that a jury could reasonably conclude that, in light of the fact that the sole purpose of Lawson's conversations with Gilliland was to discuss her injuries and subsequent treatment, this generically derogatory term was directed at McFadden's professional abilities and was intended by Lawson to be understood in that way. It has been said that it is, in the first instance, the trial court's decision as to whether a particular remark in its commonly understood meaning is capable of being construed as slanderous, but once that threshold is crossed, it is the jury's decision as to whether, on the particular facts, the remark did, in fact, defame the person subjected to the comment. Cameron Bros. v. Posey, 237 Miss. 432, 438, 115 So.2d 138, 140 (1959); Rodgers v. Kline, 56 Miss. 808 (1879). To the extent that the trial court's ruling indicates the view that such remarks were not capable of being understood as disparaging McFadden's professional abilities, the court was manifestly in error.
¶ 15. The trial court appears, in reality, to have simply brushed the alleged statements aside as being of insufficient gravity to warrant legal redress. We are aware of no such de minimis rule in the law of slander. Those considerations more properly are for the consideration of the jury in the area of assessing such damage as would appear warranted in view of the totality of the circumstances in which such patently derogatory remarks were offered.
¶ 16. Alternatively, the appellees contend that Lawson's remarks disparaging McFadden's professional abilities were subject to a qualified privilege. The privilege exists, according to the argument, because Lawson and Mrs. Gilliland shared a community of interest in obtaining a more qualified practitioner to treat her injuries and Lawson's comments were intended by him to steer her in that direction. *25 See Hooks v. McCall, 272 So.2d 925 (Miss.1973). Even conceding that, for both professional and humanitarian reasons, Lawson may have had a genuine interest in Mrs. Gilliland's speedy recovery, we are satisfied that, as a general proposition, an insurance adjuster attempting to resolve a potential liability claim against his insured is in an adversarial relationship with the injured claimant. Matters such as the insured's degree of fault, the extent of any injuries, and the reasonableness of medical treatment are all areas of existing or potential dispute. The mere fact that the adversaries have a common interest in settling their dispute on mutually agreeable terms does not, in our view, create the kind of shared interest that would give rise to a privilege protecting communications between the adversaries during the settlement process.
¶ 17. We, therefore, conclude that the trial court erred in directing a verdict on McFadden's claim that he had been slandered in his professional capacity by Lawson's remarks as testified to by Gilliland. We note from the pleadings that Lawson denies ever having made such disparaging characterizations of McFadden. That, of course, presents a classic jury question once the plaintiff introduces, as McFadden did here, competent evidence that the remarks were made. Travis, 224 Miss. at 196, 79 So.2d at 735; Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 59-61, 25 So.2d 572, 575-76 (1946). Once competent evidence was presented that would, if believed by the jury, support a conclusion that Lawson referred to McFadden as a "quack" or a "crackpot" in the course of discussing the advisability of Gilliland's continued treatment by McFadden, the trial court was without authority to interpose its own view of whether McFadden had, in fact, been defamed. That became a matter that could only be resolved by the jury after hearing all of the evidence.
¶ 18. Though we have concluded that this case must be reversed and remanded for further proceedings on the issue of Lawson's alleged slanderous remarks, we are faced with the situation where McFadden presented no evidence at trial of any special damages, but was apparently content to pursue a claim for general damages unsupported by any evidence beyond the fact that he was distressed upon learning of Lawson's alleged remarks. We also note that, prior to trial, McFadden waived any claim for loss of professional income, which Professor McCormick says is one of the three prongs of general damages, the remaining two being (a) damage to professional reputation, (b) the wounded sensibilities of the victim of such slanderous remarks and any physical problems growing out of those emotional wounds. CHARLES T. McCORMICK, supra, § 116.
¶ 19. Having confined himself to a claim for general damages only and having further excluded the possibility of jury consideration of one of the three elements of general damages at the first trial, it would be unfair to permit McFadden a second bite at the apple on remand.
¶ 20. Though it is clear that the exclusion of evidence of McFadden's income before and after the alleged remarks necessarily renders inappropriate an inquiry into the third element of general damages; i.e., loss of business, that does not end the matter of the consequences of McFadden's trial strategy. It is beyond logical dispute that one of the key measures of damage to a person's professional reputation is the effect a particular act has on the person's level of income derived from that profession. In that light, it would be patently unfair to permit McFadden to deprive the defendants of this critical evidence and yet insist that the jury consider some nebulous and largely intuitive determination of damage to his professional reputation arising out of Lawson's comments. A slandered plaintiff may get his claim for general damages to the jury by proving utterance of the slanderous words and nothing more, but that does not mean that he may affirmatively exclude relevant evidence sponsored by the defendant tending to minimize *26 the extent of the plaintiffs general damage for reasons specific to the case.
¶ 21. By his own election in this case, McFadden has precluded the defendants from offering evidence that would be crucial to the proper determination of the damage, if any, to McFadden's professional reputation arising out of Lawson's alleged slanderous remarks. Having made that election, McFadden would enjoy an unfair advantage were he yet able to insist that the jury consider reputation damages as one of the three components of general damages.
¶ 22. For that reason, should the jury on remand return a plaintiff's verdict on the issue of slander, it should be instructed that, in assessing damages, it must confine itself to considering those general damages found to arise from the wounds to McFadden's feelings occasioned by Lawson's alleged unflattering statements and nothing more.
¶ 23. Nothing we have said should be interpreted as touching on McFadden's additional claim for punitive damages. That issue is not before the Court.
¶ 24. Finally, we also note that the defendants appear to be advancing a form of "truth" defense by hoping to show (a) that McFadden has had difficulties with the State's medical licensing board regarding his practices relating to prescribing narcotic pain medication, and (b) that fact-finding deliberative bodies within the state have, on occasion, rejected his expert testimony as a physician. There is no doubt that, in order to constitute slander, the remarks must not only be disparaging, they must also be false. Franklin v. Thompson, 722 So.2d 688(¶ 13) (Miss. 1998); Bass v. Burnett, 151 Miss. 852, 119 So. 827, 828 (1929). Whether evidence of various problems such as those mentioned above, in a sufficient accumulation, could fairly be said to justify a characterization of McFadden as a "quack" or a "crackpot" on the basis that the words, though certainly unflattering, were true in some rough sort of way is a question that is not now before us. To the extent that the defendants desire to continue to pursue the alternate defense that Lawson's descriptions of McFadden were sufficiently accurate in characterizing McFadden's abilities as a physician as to constitute the truth, it should be understood that nothing we have said may be interpreted as preempting that pursuit.
¶ 25. THE JUDGMENT OF CLAY COUNTY IS AFFIRMED AS TO THE VERDICT DIRECTED FOR THE APPELLEES ON THE CAUSE OF ACTION BASED ON TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AND IS REVERSED AND REMANDED ON THE CAUSE OF ACTION BASED ON COMMON LAW SLANDER SUBJECT TO THE CONDITION THAT, IN THE EVENT OF A VERDICT ON THAT CAUSE OF ACTION IN FAVOR OF THE APPELLANT, THE QUESTION OF DAMAGES SHALL BE LIMITED TO CONSIDERATIONS OF THE GENERAL DAMAGES ARISING OUT THE APPELLANT'S WOUNDED FEELINGS OR EMOTIONAL DISTRESS UPON LEARNING OF THE UTTERANCE OF THE SLANDEROUS WORDS. THE COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.
SOUTHWICK, P.J., BRIDGES, MOORE, AND THOMAS, JJ., CONCUR. LEE, J., CONCURS IN RESULT ONLY. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND PAYNE, JJ.
IRVING, J., concurring in part, dissenting in part:
¶ 26. The majority concludes that the trial court erred in directing a verdict against McFadden on his claim for defamation, and I concur in the majority's *27 finding on this point. However, I disagree with the majority that on remand, McFadden should be precluded from introducing evidence of loss of professional income. I also dissent from the majority's conclusion that the trial court's directed verdict against McFadden on McFadden's claim of tortious interference with his business relationship was a proper ruling.
¶ 27. The majority says that because McFadden voluntarily relinquished any claim to loss of professional income when the case went to trial below, he should be precluded on remand from offering evidence of loss of professional income. The majority concludes that it would be unfair to "permit McFadden to deprive the defendants of this critical evidence and yet insist that the jury consider some nebulous and largely intuitive determination of damage to his professional reputation arising out of Lawson's comments."
¶ 28. The record reflects that McFadden voluntarily relinquished any claim to loss of professional income in a losing effort to avoid having to produce his tax returns for the years 1989-1991. In abandoning his claim for loss of professional income, McFadden stated:
The damages which Plaintiff is now seeking are as follows:
(1) damage to his reputation, which he suffered in the eyes of Judy Gilliland,
(2) damage to his reputation, which Plaintiff suffered in the eyes of third parties to whom Gilliland told of the comments made by the Defendants,
(3) damage for mental anxiety; and
(4) punitive damages.
Since Plaintiff, Dr. John McFadden, is no longer seeking damages for lost income, Plaintiff respectfully moves the Court to rule that he need not produce his income tax returns.
¶ 29. The defendants, by subpoena served on McFadden's accountant, had sought McFadden's tax returns for the years stated. Though McFadden abandoned his claim for loss of professional income as an element of damages in the defamation claim, the trial court nevertheless overruled McFadden's challenge to the subpoena, stating:
The Court, [h]aving heard the arguments of counsel, and studying the law, finds that even though the plaintiff has stipulated that he is not making any claims whatsoever for lost income as a result of the alleged actions of the defendants, the income tax returns of the plaintiff are relevant. Said income tax returns relate to the plaintiffs reputation in the community and as a medical practitioner. The plaintiffs objection that said income tax returns are irrelevant to the cause of action is not well taken, and therefore his motion to quash is OVERRULED.
McFadden's federal tax returns for the years 1989-1991 were in fact admitted into evidence in the trial as exhibits 8, 9 and 10. It is thus clear that the defendants were not placed in the sort of disadvantage about which the majority worries may be the case on remand. Therefore, I see no need for this court to address this issue, but since the majority addresses it, I think they are clearly wrong in concluding that McFadden, if he chooses to do so, should be prevented from providing proof of economic loss in his defamation claim. His strategy did not work at the trial, and I see no reason to penalize him for trying.
¶ 30. Turning to the claim of tortious interference with a business relationship, I cannot agree with the majority that McFadden's claim must fail because he failed to produce any "credible evidence upon which the jury could deliberate to arrive at an informed estimation of McFadden's actual damages arising out of Lawson's alleged efforts to interfere with McFadden's business relationship with Gilliland." I admit the evidence of economic loss on this point is scant; however, I believe it at least sufficient for the jury to consider.
*28 ¶ 31. The majority, while acknowledging that Lawson's actions caused Gilliland to cancel her pending appointment with Dr. McFadden, nevertheless concludes that McFadden presented no evidence of actual damage proximately caused by Lawson's interference with the business relationship between McFadden and Gilliland. McFadden was not treating Gilliland for free; his testimony was that he would have charged Judy Gilliland had she continued to come to him. Indeed, exhibit 4, which was admitted into evidence during the trial, indicates an advance payment to McFadden in the amount of $963 as payment for services rendered to Gilliland. These services were rendered in connection with injuries received by Gilliland in the automobile accident between her and USF & G's insured.
¶ 32. When McFadden's counsel attempted to question him about what amount McFadden would have charged Gilliland had she continued to use him, defense counsel objected on the basis that the answer would be speculative, and the court sustained the objection. While McFadden did not make a proffer at that time, I do not see the failure as fatal because even if a proffer had been made, it too would have been speculative. This is so because the actual charge would of course be dependent upon the treatment rendered, and that could not be determined in a vacuum in the absence of a patient to treat. Neither do I see a problem with Dr. McFadden's abandonment of any claim for loss of income because the abandonment related to the defamation claim, not the tortious interference with business relationship claim.
¶ 33. There is no doubt in this record that Lawson, as an agent of USF & G, interfered with the business relationship between McFadden and Gilliland. There is no doubt that because of Lawson's interference, McFadden suffered at least some economic loss from losing Gilliland as a patient. Because the course of future treatment had not yet been determined at the time of the interference, the extent of the economic loss suffered by McFadden cannot be determined with any measure of exactitude. However, it is a simple concept that a wrongdoer should bear the risk of any uncertainty which his wrong has created. R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss.1988). Further, "[l]iability cannot be escaped on the grounds that the proof as to the amount of damages, if any, is too uncertain to justify the lower court's award. It is well recognized that `Mississippi is equally firm in its determination that a party will not be permitted to escape liability because of the lack of a perfect measure of damages his wrong has caused. Cf. Koehring Co. v. Hyde Construction Co., 254 Miss. 214, 178 So.2d 838, 853(1965).' Johnston v. Safeco Insurance Co. of America, 727 F.2d 548, 551 (5th Cir.1984)." Id. at 1012.
¶ 34. The majority is correct that a jury's verdict cannot be based on mere speculation. However, I believe a verdict premised on certain liability and damages is not speculative because the exact amount of damages cannot be determined with mathematical accuracy. For example, the law does not prevent one from recovering damages for pain and suffering because those damages cannot be tied to exact figures. What has to be shown is that pain and suffering actually occurred. It seems to me that once McFadden proved an economic loss, he was entitled to recover for that loss. If he then failed to present the jury with enough evidence to compute the loss, it appears to me that the law would not prohibit the jury from returning at least nominal damages.
¶ 35. I also believe one who has suffered an intentional interference with his business relationship by another is entitled to recover for both loss of income and mental anguish as elements of damages. Of course, in order to be compensated for any element of damages one has to prove that element. Intentional infliction of mental anguish may of course be a separate tort. *29 However, I do not believe the fact that it may be pled as a separate tort precludes it from being considered as an element of damages in a claim for intentional interference with a business relationship provided it can be shown that the victim actually suffered mental anguish as a result of the tortious interference of his business relationship.
¶ 36. In this case, Dr. McFadden testified that he was hurt and distressed upon learning of the disparaging comments made about him to Gilliland by Lawson. There is no evidence that Dr. McFadden sought medical treatment for the distress about which he spoke. Admittedly, this evidence is far short of what is required to prove the separate tort of intentional infliction of mental anguish or emotional distress. However, when viewed as an element of damages in an already proven intentional tort, I see no reason why the standard ought to be as high. The majority correctly recognizes that a victim of the intentional tort of defamation meets his burden of proof without presenting proof of actual damages because such damages are presumed. While I have found no case holding that any element of damages may be presumed in the intentional tort of interference with a business relationship, I see no reason why such should not be so on the facts in the case before us, for the acts constituting the slander are part and parcel of the acts constituting the tortious interference of the business relationship. For these reasons, I dissent from the majority's conclusion that the trial court's disallowance of McFadden's claim of tortious interference of business relationship was a proper determination.
KING, P.J., AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.