LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. A jury in the Lincoln County Circuit Court found Odessia Humphrey and Michael C. Blue guilty of Count I, robbery, and Count II, conspiracy. In regard
 
 *925
 
 to the robbery count, Humphrey was sentenced to fifteen years, with ten years to serve, five years suspended, and five years of post-release supervision. In regard to the conspiracy charge, Humphrey was sentenced to five years, with five years suspended and five years of post-release supervision. The trial judge ordered Humphrey’s sentences to be served consecutively, all in the custody of the Mississippi Department of Corrections (MDOC). Humphrey was also ordered to pay a $5,000 fine, $1,050 in restitution, and $250 to the Crime Victim’s Compensation Fund.
 

 ¶ 2. In regard to the robbery count, Blue was sentenced to serve fifteen years. In regard to the conspiracy count, Blue was sentenced to five years, with the full sentence suspended and five years of post-release supervision. The trial judge ordered Blue’s sentences to be served consecutively, all in the custody of the MDOC. Blue was also ordered to pay a $5,000 fine, $1,050 in restitution, and $250 to the Crime Victim’s Compensation Fund.
 

 ¶ 3. Both Humphrey and Blue filed post-trial motions, which were subsequently denied. Humphrey and Blue filed separate appeals in which two of their issues are similar, namely that: (1) the evidence was insufficient to support the verdict, and (2) the verdict is against the overwhelming weight of the evidence. Blue also asserts that the trial judge erred in commenting to the jury about a witness who failed to appear.
 

 FACTS
 

 ¶ 4. On Friday afternoon, October 2, 2009, Jesse Maxwell cashed two checks— one was his Supplemental Security Income check for $504 and the other was a work check for $150. In addition to those funds, Maxwell had additional cash in his pocket. Maxwell eventually ended up at a local club in Lincoln County, Mississippi. Maxwell testified that he drank six beers over the course of approximately five hours and that he was “buzzed” by the time the club closed at midnight.
 

 ¶ 5. Maxwell saw Blue outside the club and offered him $10 for a ride home. Sitting in the backseat behind Blue, Maxwell recognized Humphrey, who was sitting in the front passenger seat. Another woman was sitting next to Maxwell. When the car arrived at Maxwell’s house, Maxwell exited and gave $10 to Blue. Maxwell testified that his left hand “was full of cash.” Maxwell stated that as he was walking toward the door, Blue and Humphrey got out of the car and followed him. Maxwell heard Blue and Humphrey discussing something, but he could not determine the exact words. Blue then asked Maxwell if he wanted to have sex with Humphrey. Maxwell declined. At that point, Blue put Maxwell in a chokehold and pushed him into the house. Blue held Maxwell down and began to beat him, with encouragement from Humphrey. Humphrey took Maxwell’s cellular phone from his pocket and all of his cash, which amounted to approximately $750. Maxwell’s cellular phone was valued at $1,200 because it had special functions due to Maxwell’s hearing impairment.
 

 ¶ 6. Maxwell testified that he passed out for a minute. When Maxwell woke up, he went to the house of a neighbor, Willie Gayten, for help. Gayten, who was also Maxwell’s landlord, testified that Maxwell came to his house and fell to the ground crying, “Michael Blue! Michael Blue!” Gay-ten noticed a car leaving Maxwell’s house at a high rate of speed. Gayten then called the authorities. Gayten testified that Maxwell was wearing a hearing aid that night and that Maxwell wears a hearing aid all the time.
 

 ¶ 7. Maxwell testified that approximately one week later, Blue approached Maxwell
 
 *926
 
 and asked him to drop the charges in exchange for $50. Maxwell declined. Officer David Johnson with the Lincoln County Sheriffs Department testified that Maxwell reported the crime on the following Monday, October 5, 2009.
 

 DISCUSSION
 

 I. INSUFFICIENT EVIDENCE
 

 ¶ 8. In regard to whether the evidence was legally sufficient to support the verdicts, we look to our standard of review. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction.
 
 Id.
 
 However, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence.
 
 Davis v. State,
 
 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
 

 ¶ 9. According to Mississippi Code Annotated section 97-3-73 (Rev.2006), robbery is defined as “feloniously tak[ing] the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person.... ”
 

 ¶ 10. Mississippi Code Annotated section 97-1-1 (Rev.2006) makes it unlawful for “two (2) or more persons [to] conspire ... [t]o commit a crime[.]” The Mississippi Supreme Court has defined the act of conspiracy as the “combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in furtherance of the conspiracy.”
 
 Brown v. State,
 
 796 So.2d 223, 225 (¶ 9) (Miss.2001) (quoting
 
 Peoples v. State,
 
 501 So.2d 424, 428 (Miss.1987)). The offense is complete upon formation of the agreement.
 
 Vickers v. State,
 
 994 So.2d 200, 212 (¶ 39) (Miss.Ct.App.2008). “The agreement need not be formal or express, but [it] may be inferred from the circumstances, particularly by declarations, acts and[,] conduct of the alleged conspirators.”
 
 Id.
 
 (citation omitted).
 

 A. Blue
 

 ¶ 11. Blue states that he was merely defending Humphrey’s honor and did not rob Maxwell of his money or cellular phone. However, it is well established that “any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.”
 
 Jones v. State,
 
 710 So.2d 870, 874 (¶ 15) (Miss.1998) (citations omitted). The jury believed that Blue subdued Maxwell so Humphrey could rob him, and there was sufficient evidence to support this belief.
 

 ¶ 12. Although there was no explicit testimony concerning a conspiracy, there was sufficient evidence for the jury to find such existed. When Maxwell paid Blue $10, Maxwell was holding cash in his left hand. Maxwell saw Blue and Humphrey exit the car and follow him. He heard Blue and Humphrey discussing something immediately prior to Blue asking Maxwell to have sex with Humphrey. The jury could infer from the circumstances that Blue and Humphrey were planning something nefarious.
 

 
 *927
 
 B. Humphrey
 

 ¶ 13. Humphrey only challenges her robbery conviction. Humphrey contends that there was no physical evidence connecting her to the robbery. However, Maxwell recognized Humphrey and specifically stated that she took his money and his cellular phone. We find that there was sufficient evidence for the jury to find Humphrey guilty of robbery.
 

 II. OVERWHELMING WEIGHT OF THE EVIDENCE
 

 ¶ 14. In regard to whether the verdicts are against the overwhelming weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18). From the evidence described in the preceding issue, we cannot find that allowing the guilty verdicts of Humphrey or Blue to stand would sanction an unconscionable injustice. This issue is without merit.
 

 III. COMMENT BY TRIAL JUDGE
 

 ¶ 15. In Blue’s other issue on appeal, he argues that the trial judge committed error in commenting to the jury that Glendora McGarry had been subpoenaed by the State and failed to appear. McGarry had been referred to during various testimony as the other woman in the car that night with Blue and Humphrey. After being informed by the trial judge that he would be instructing the jury as to McGarry’s whereabouts, Blue’s attorney objected and asked for a mistrial based upon the failure of McGarry to comply with the subpoena. The trial judge denied this motion. We note that neither Blue’s nor Humphrey’s attorneys asked for a continuance due to McGarry’s failure to appear.
 

 ¶ 16. Our standard of review for the denial of a mistrial is abuse of discretion.
 
 Spann v. State,
 
 771 So.2d 883, 889 (¶ 9) (Miss.2000). It’s clear that Blue and Humphrey wanted to, as the trial judge stated, “have [their] cake and eat it, too.” The trial judge further found that it would be disingenuous for Blue and Humphrey, knowing that McGarry had failed to appear, to state in their closing arguments that the State should have produced McGarry in order to testify as to what happened that night. We can find no abuse of discretion by the trial judge in denying the motion for a mistrial. This issue is without merit.
 

 ¶ 17. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF ODESSIA HUMPHREY OF COUNT I, ROBBERY, AND SENTENCE OF FIFTEEN YEARS, WITH TEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND COUNT II, CONSPIRACY, AND SENTENCE OF FIVE YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES IN COUNTS I AND II TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND TO PAY A $5,000 FINE, $1,050 IN RESTITUTION TO JESSE MAXWELL, AND $250 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
 

 ¶ 18. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF MICHAEL C. BLUE OF COUNT I, ROBBERY, AND SENTENCE OF FIFTEEN YEARS TO SERVE; AND COUNT II, CONSPIRA
 
 *928
 
 CY, AND SENTENCE OF FIVE YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES IN COUNTS I AND II TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND TO PAY A $5,000 FINE, $1,050 IN RESTITUTION TO JESSE MAXWELL, AND $250 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
 

 IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.