IRVING, P.J.,
for the Court:
¶ 1. After being expelled from membership in the Military Order of the Purple Heart (MOPH), Henry J. Cook III filed a complaint in the Hancock County Circuit Court, alleging claims of civil conspiracy, retaliation, breach of fiduciary duty, and defamation against the MOPH, the Military Order of the Purple Heart Service Foundation (Service Foundation), and several of the organizations’ officers and directors (the individual defendants).[1] Cook also moved to disqualify the law firm Hun-ton & Williams, which represented the MOPH and the individually named officers and directors, due to an alleged conflict of interest.
¶ 2. The circuit court dismissed Cook’s complaint under Mississippi Rule of Civil Procedure 12(b)(6) for the failure to state a claim upon which relief could be granted. It also found that Cook’s motion to disqualify Hunton & Williams was without merit. We likewise find that Cook has failed to state a claim upon which relief can be granted and affirm.
¶ 3. We also must 'address' two other matters raised in this appeal. First, the individual defendants have filed a cross-appeal, arguing that if Cook prevails on appeal, they should nonetheless be dismissed because the circuit court lacked personal jurisdiction. It is unnecessary to address this issue since we find no merit to Cook’s issues on appeal. Thus, the cross-appeal is dismissed as moot.
¶ 4. Second, the Service Foundation has moved to dismiss the appeal as it relates to the Service Foundation because Cook’s notice of appeal was untimely filed. We agree that the notice of appeal from the order dismissing the Service Foundation was untimely, and we grant the Service Foundation’s motion.
FACTS
¶ 5. The MOPH is a congressionally chartered corporation that provides assistance for combat-wounded veterans. It receives its funding from the Service Foundation. The Service Foundation collects charitable donations and distributes them to various veterans programs. Cook was national commander of the MOPH from August 2007 to August 2008, and, at all times, was a member of the Diamond-head, Mississippi chapter of the MOPH. He began an investigation in 2007 of the Service Foundation’s alleged mismanagement of charitable contributions.
¶ 6. Cook’s allegations against the Service Foundation received national media attention. Some confusion arose as to which organization had mismanaged the contributions. An image of Cook appeared in the media with an “F” stamped on his face after the American Institute of Philanthropy gave the Service Foundation an F rating. On November 9, 2007, Cook had the MOPH issue a press release to clarify that the MOPH and the Service *793 Foundation were distinct organizations. The press release, which was copied in the complaint, quoted Cook as saying: “We have not failed combat wounded veterans and certainly don’t deserve the ‘F’ awarded our sister organization, the Service Foundation, in a report card published by the American Institute of Philanthropy!!] ... The Service Foundation doesn’t directly support the woundedf;] they support our efforts by giving MOPH an annual grant.” The press release went on to clarify that “[m]any charitable veterans programs are funded by the Service Foundation, of ' which[ ] MOPH is only one.”
¶ 7. On April 18, 2008, Dennis Wallot and three additional members of MOPH’s National Finance Committee filed a grievance against Cook. Their grievance asserted that Cook had violated multiple provisions of the MOPH’s bylaws, including improperly seizing and commingling the MOPH Life Membership Fund. However, Cook argues that the grievance was nothing more than an act of retaliation for his whistle-blowing. Further, Cook argues that the defendants themselves had unclean hands because they were in violation of the corporate bylaws for failing to follow procedure in filing the grievance— such as having detailed facts in writing, having documents signed and notarized, and having three impartial individuals to review the matter. Cook also argues that the bylaws did not allow for a grievance and/or discipline against the national commander, the position he held until August 16, 2008.[2]
¶ 8. The grievance against Cook was handled by Jeffrey Roy, then-senior vice commander and Cook’s soon-to-be successor as national commander. In June 2008, Roy issued a cease-and-desist letter to the MOPH national inspector and the MOPH National Investment Audit Committee to stop their investigations 'of the Service Foundation. According to Cook, the investigations that were conducted until that point had confirmed the results of Cook’s investigation.
¶ 9. On July 21, 2008, Cook filed disciplinary charges against Roy for unlawfully interfering with the investigation and for improperly filing a grievance against him. Cook also filed disciplinary charges against Wallot — one of the individual defendants— for misappropriating funds and for failing to disclose to the MOPH national membership that he had been previously censured by the securities industry.
¶ 10. After Roy became national commander, three other of the individual defendants recommended that the MOPH expel Cook from its membership. Roy did not expel Cook, but suspended him and advised him not to participate in any MOPH activities. However, Cook continued to communicate with MOPH members, encouraging them to attend the funerals of other Purple Heart recipients and inquiring if any members were attending a funeral in Arlington National Cemetery. Cook also contacted Roy when it came to Cook’s attention that a MOPH member was a convicted sex offender.
¶ 11. At this point, Roy notified Cook that his suspension precluded him from being involved in MOPH affairs, and because he was in violation of his suspension, disciplinary action would be taken. Before any action was taken against Cook, Roy’s term as national commander ended, and he was succeeded by James M. Sims, also an individually named defendant. Sims initiated the disciplinary action against Cook that ultimately led to Cook’s expulsion from the MOPH.
*794 ¶ 12. On August 2, 2010, Cook filed a complaint in the Circuit Court of Hancock County against the MOPH, the Service Foundation, and the individual defendants. Cook raised the following counts: (1) civil conspiracy; (2) unlawful retaliation; (3) defamation; (4) breach of fiduciary duty; and (5) unlawful acts in violation of the MOPH’s corporate charter and bylaws. As injuries, Cook alleged that he was stripped of his MOPH lifetime-membership status, his right to funeral arrangements usually given to recipients of Purple Heart Medals, his office in the local Dia-mondhead chapter, and his paid-for lifetime subscription to Purple Heart magazine. He also claimed emotional distress and damage to his reputation because Sims had publicly called him “dishonest” and an “[expletive] crook.” Finally, Cook moved to disqualify Hunton & Williams— the law firm that represented the individual defendants and the MOPH — due to an alleged conflict of interest.
¶ 13. The MOPH moved to dismiss Cook’s complaint under Mississippi Rule of Civil Procedure 12(b)(6). The Service Foundation joined this motion. The individual defendants moved to dismiss the complaint against them for lack of personal jurisdiction under Mississippi Rule of Civil Procedure 12(b)(2), claiming they were not Mississippi residents and had not committed any acts against Cook in this State.
¶ 14. A hearing was held on May 10, 2011, to address the defendants’ motions to dismiss and Cook’s motion to disqualify Hunton & Williams. On May 18, 2011, the circuit court granted the Service Foundation’s motion to dismiss. On May 31, 2011, the court granted MOPH’s motion to dismiss as to Counts II and III — retaliation and defamation. The remaining issues were taken under advisement. On June 16, 2011, the individual defendants moved to join the MOPH’s motion to dismiss. On June 24, 2011, the circuit court denied Cook’s motion to disqualify Hunton & Williams and the individual defendants’ motion to dismiss for lack of personal jurisdiction. Also, on June 24, 2011, the circuit court granted the MOPH’s Rule 12(b)(6) motion to dismiss as to Cook’s remaining claims and dismissed Cook’s complaint in its entirety, which included his claims against the individual defendants. Since all defendants had been dismissed at this point, Cook filed a notice of appeal.
¶ 15. Cook’s raises the following issues on appeal: (1) the complaint stated a claim upon which relief may be granted and should not have been dismissed; (2) Hun-ton & Williams should have been disqualified due to a conflict of interest; and (3) Hunton & Williams should have been disqualified because some of its employees were potential witnesses to contested matters in the litigation.
¶ 16. The individual defendants cross-appeal, asserting that the circuit court erred in denying their motion to dismiss for lack of personal jurisdiction. Also, the Service Foundation asserts that Cook’s notice of appeal from the circuit court’s 12(b)(6) dismissal was untimely filed; thus, the appeal of this order should be dismissed.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Service Foundation’s Motion to Dismiss Appeal

¶ 17. We must first address whether this Court has jurisdiction to hear the appeal of the order dismissing the Service Foundation. Mississippi Rule of Appellate Procedure 4(a) allows thirty days from the entry of a final judgment to file a notice of appeal. The circuit court *795 issued two judgments in this case: the judgment dismissing the Service Foundation on May 18, 2011, and the judgment dismissing the remaining defendants on June 24, 2011. On July 18, 2011, Cook filed one notice of appeal of both orders. The notice was timely filed as to the dismissal of the individual defendants and the MOPH, but untimely filed as to the dismissal of the Service Foundation, as more than thirty days had passed.
¶ 18. Cook argues that because there were multiple defendants and not all the claims were disposed of by the May 18, 2011 order dismissing the Service Foundation, the order was not a final, appealable judgment. Instead, he argues the judgment was not final until June 24, 2011, when the remaining defendants were dismissed; thus, he argues his appeal of both orders was timely filed.
¶ 19. Mississippi Rule of Civil Procedure 54(b) addresses the finality of judgments involving multiple parties or multiple claims for relief. It states:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated[,] which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[,] and the order or other form of decision is subject to revision at any time before the entry of [a] judgment adjudicating all the claims and the rights and liabilities of all the parties.
M.R.C.P. 54(b).
¶20. The order dismissing the Service Foundation states that it is “a final judgment” pursuant to Rule 54(b), and “that there is no just reason for delay of its entry.” Although this operative language is an indicator the judgment was final, “the trial court’s use of the operative language from Rule 54(b) does not ensure that the dictates of Rule 54(b) have been met.” Miller v. Cont’l Mineral Processing, 39 So.3d 998, 1001 (¶ 11) (Miss.Ct.App.2010) (citing Myatt v. Peco Foods of Miss., Inc., 22 So.3d 334, 338-40 (¶¶ 9-13) (Miss.Ct.App.2009)).
¶ 21. A Rule 54(b) judgment is only proper where “the remainder of the case is going to be inordinately delayed, and it would be especially inequitable to require a party to wait until the entire case is tried before permitting him to appeal.” Miller, 39 So.3d at 1001 (¶ 11). A Rule 54(b) judgment should not be granted where it would result in piecemeal litigation or multiple appeals of the same issue. Reeves Constr. & Supply, Inc. v. Corrigan, 24 So.3d 1077, 1083 (¶¶ 16-17) (Miss.Ct.App.2010).
¶22. The complaint charged the Service Foundation with vicarious liability for the actions of its employees.[3] Thus, had
*796 Cook appealed the order dismissing the Service Foundation, the only issue would have been whether the individual defendants were acting within the course arid scope of their employment, or whether their acts were authorized or ratified by the Service Foundation. See Children’s Med. Grp., P.A. v. Phillips, 940 So.2d 931, 985 (¶ 13) (Miss.2006). This issue was not so “undeniably intertwined” with those of the other defendants that it could not be separated, and it was possible for Cook to appeal the issue of vicarious liability without causing unnecessary or piecemeal litigation. Therefore, we find that the circuit court did not abuse its discretion in holding that the dismissal of the Service Foundation was a final, appealable judgment under Rule 54(b).
¶ 23. Because the dismissal of the Service Foundation was a final judgment, Cook’s notice of appeal from that dismissal was untimely. The timely filing of a notice of appeal is jurisdictional. Smith v. Parkerson Lumber, Inc., 890 So.2d 832, 834 (¶ 12) (Miss.2003). Cook cites no authority for the proposition that the time for appeal does not begin to run when a Rule 54(b) judgment is granted. Thus, we lack jurisdiction to hear Cook’s appeal of the order dismissing the Service Foundation. We will address the issues related to the individual defendants and the MOPH, as Cook’s notice of appeal was timely as to their dismissal.

II. Rule 12(b)(6) Dismissal

¶ 24.' A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for the failure to state a claim upon which relief can be granted is reviewed de novo, as it raises an issue of law. Cook v. Brown, 909 So.2d 1075, 1077-78 (¶ 8) (Miss.2005). “[A] Rule 12(b)(6) motion tests the legal sufficiency of the complaint.” Cook, 909 So.2d at. 1078 (¶ 8). Our review is limited to the face of the pleading. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1211 (¶ 15) (Miss.2001). The allegations in the complaint must be accepted as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. Rose v. Tullos, 994 So.2d 734, 737 (¶ 11) (Miss.2008) (citing Ralph Walker, Inc. v. Gallagher, 926 So.2d 890, 893 (¶ 4) (Miss.2006)). The appellate court need “not defer to the trial court’s ruling.” Id. (quoting Ralph Walker, 926 So.2d at 893 ’(¶ 4)). “In order to affirm an order granting dismissal on a Rule 12(b)(6) motion, ... there must be no set of facts that would allow the plaintiff to prevail.” J.B. Hunt Transp., Inc. v. Forrest Gen. Hosp., 34 So.3d 1171, 1173 (¶ 8) (Miss.2010) (quoting Wilbourn v. Equitable Life Assurance Soc’y of the U.S., 998 So.2d 430, 435 (¶ 12) (Miss.2008)).
¶ 25. Regarding the allegations that must be contained in the complaint, Mississippi is a “notice-pleadings” state, which means:
[Ujnder our rules, [the plaintiff] is not required to plead the specific wrongful conduct. At the pleading stage, he is required only to place [the defendant] on reasonable notice of the claims against it and to demonstrate that he has alleged a recognized cause of action upon which, under some set of facts, he might prevail.
Children’s Med. Grp., 940 So.2d at 934 (¶ 10); M.R.C.P. 8.
*797 ¶ 26. We note that Cook did not seek to amend his complaint after it was dismissed,[4] although he was entitled to do so.[5] Since Cook did not seek leave to amend, our review is limited to the allegations in the complaint, which we take as true.

a. Unlawful Retaliation for Whistle-Blowing

¶ 27. Cook’s complaint alleged that he was expelled from the MOPH in retaliation for exposing the Service Foundation’s corruption. Cook admits that he is not a member of a protected class that may assert retaliation; rather, he argues that he should be treated as a shareholder in a corporate freeze out.
¶ 28. A “[c]orporate freeze out is an intentional tort that is committed with willful and wanton disregard for the right of the shareholder who is frozen out.” Missala Marine Servs., Inc. v. Odom, 861 So.2d 290, 295 (¶ 22) (Miss.2003). A freeze out occurs when shareholders act to restrict the rights of another shareholder. See Fought v. Morris, 543 So.2d 167, 171 (Miss.1989). “[D]irectors and officers of a corporation stand in a fiduciary relationship to the corporation and its stockholders. These duties include exercising the utmost good faith and loyalty in [the] discharge of the corporate office.” Id. When a majority of shareholders attempt to unfairly control a minority, the “attempt to squeeze out a minority shareholder must be viewed as a breach of his fiduciary duty.” Id. (citation omitted).
¶ 29. Cook admits that the principles he cites regarding shareholders have not been applied to a member of an organization. However, he argues this Court should extend those principles to this case because of public policy and common sense. In the alternative, he argues he should be treated as a MOPH employee. Cook argues the following cases support his position that he should be treated as an employee or member of a protected class: DeCarlo v. Bonus Stores, Inc., 989 So.2d 351, 355-57 (¶¶ 11-18) (Miss.2008); Paracelsus Health Care Corp. v. Willard, 754 So.2d 437, 443-44 (¶¶ 24-27) (Miss.1999); McArn v. Allied Bruce-Terminix Co., 626 So.2d 603, 607 (Miss.1993); and Bowman v. State Bank of Keysville, 229 Ya. 534, 331 S.E.2d 797, 801 (1985). These cases recognize “a public policy exception to the employment[-]at[-]will doctrine when 1) an employee refuses to participate in an illegal act; or 2) an employee is discharged for reporting illegal acts of his employer to the employer or anyone else.” Paracelsus Health Care, 754 So.2d at 442-43 (¶ 23) (citing McArn, 626 So.2d at 607).
¶ 30. According to Cook, the public-policy exception articulated in the cases cited above should apply to him as a member of MOPH to protect him from retaliation because his actions are analogous to the actions of shareholders and employees that expose criminal activities. That may be true, but such extension of the public-policy exception would have to be extended by the Mississippi Supreme' Court. As Cook is not a member of any recognized protected class, nor was he engaged in a *798 protected activity, we are unable to see how he can prove any see of facts that can support a claim for unlawful retaliation. This issue is without merit.

b. Defamation

¶ 31. The complaint alleges that Sims called Cook a “crook,” a “f* * * * * ⅞ crook,” and “dishonest.” Cook argues these words alone are sufficient to support a claim for defamation per se.
¶ 32. Cook’s complaint states:
The individual defendants, at times and places known and unknown, and in furtherance of the conspiracy, maliciously caused defamatory statements to be made against plaintiff Col. Cook. The known statements include that on May 1, 2010, in Port Allen, LA, defendant Sims Verbally stated publicly that plaintiff Col. Cook was a “crook, ” a ¡y» * * * *g croo]c” “dishonest.” The words used were defamatory per se. The innuendo intended by Sims and understood by his listeners was that defendant Sims was saying that plaintiff Col. Cook had stolen funds of [the] MOPH. The defamatory statements were false and known by defendant Sim[s] and the co-conspirators, including the other defendants, to be false. The defamatory statements were also insults calculated to lead to a breach of the peace. Defendant Sims knew and intended that, in furtherance of the conspiracy, the defamation be repeated by others.
(Emphasis added).
¶ 33. Slander is the spoken form of the general tort of defamation. See Speed v. Scott, 787 So.2d 626, 631 (¶ 21) (Miss.2001). To prove slander under Mississippi law, the following elements must be shown:
(a) a false statement that has the capacity to injure the plaintiffs reputation;
(b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on [the] part of publisher; and (d) “either actionability of [the] statement irrespective of special harm or [the] existence of special harm caused by publication.”
Id. (citation omitted). The existence of “special harm” in the last element is the focus of Cook’s argument on appeal.
¶ 34. “Slander requires proof of ‘special harm’ unless the statements were actionable per se.” Id. at 632 (¶ 25). Slander per se does not require proof of special damages because “the law presumes that one who has been defamed in certain ways has necessarily suffered damage arising from his wounded feelings and diminished reputation.” McFadden v. U.S. Fid. & Guar. Co., 766 So.2d 20, 23 (¶ 12) (Miss.Ct.App.2000) (citing McCrory Corp. v. Istre, 252 Miss. 679, 691, 173 So.2d 640, 646 (1965)). “A slandered plaintiff may get his claim for general damages to the jury by proving utterance of the slanderous words and nothing more.... ” Id. at 25 (¶ 20). Relevant to Cook’s case, the Mississippi Supreme Court has recognized that words are slanderous per se when they “imput[e] the guilt or commission of some criminal offense involving moral turpitude and infamous punishment.” Speed, 787 So.2d at 632 (¶27).[6]
*799 ¶ 35. Cook argues that he is not required to prove special damages for three reasons. First, he contends that Sims’s words are actionable per se under Mississippi Code Annotated section 95-1-1 (Rev.2004) because the words were insults calculated to lead to a breach of the peace. Section 95-1-1 states:
All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases.
¶36. While it may appear that labeling another as a thief and dishonest person is an insult and may, in some instances, lead to a breach of the peace, Cook, nevertheless, is not relieved of his obligation to prove special damages, as it is well settled in Mississippi jurisprudence that the mere use of a label such as “thief,” “crook,” or “liar” is insufficient to prove defamation per se. Speed, 787 So.2d at 633 (¶29); W.T. Farley, Inc. v. Bufkin, 159 Miss. 350, 356, 132 So. 86, 87 (1931). For words to be per se actionable, “[t]he slander ... must be clear and unmistakable from the words themselves and not be the product of any innuendo, speculation^] or conjecture.” Baugh v. Baugh, 512 So.2d 1283, 1285 (Miss.1987).
¶ 37. It appears Cook’s complaint concedes that the slander is not clear and unmistakable from the words themselves. The complaint states: “The innuendo intended by Sims ... was that ... Col. Cook had stolen funds of [the] MOPH.” (Emphasis added). As stated above, innuendos are not sufficient to prove defamation per se. Id. Therefore, Cook has not demonstrated that he can prove a claim for defamation per se under any set of facts alleged.
¶ 38. Second, Cook argues Sims’s statements ascribed characteristics that would adversely affect Cook’s position as national commander of the MOPH, and this is defamation per se according to the Restatement (Second) of Torts. Section 573 of the Restatement (Second) of Torts (1977) states:
One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.
The comment to this section states that it “applies to offices held in private organizations, such as labor unions, churches, fraternities, clubs and learned societies. It is immaterial whether the office is honorary or for profit.” Restatement (Second) of Torts § 573 cmt.
¶ 39. . Even if we chose to apply this section of the Restatement, the words published must still be “clear and unmistakable” pursuant to our case law. See Baugh, 512 So.2d at 1285. Cook has not alleged that the words were “clear and unmistakable”; rather, he states the defamation was the product of innuendo. Thus, this argument fails.
¶ 40. Third, Cook argues that this Court should apply Louisiana law because,
*800 even though the resulting harm occurred in Mississippi, the defamation occurred in Louisiana. Cook argues that his complaint states a claim upon which relief can be granted under Louisiana law because Louisiana does not recognize a distinction between special and general damages. Even if Louisiana law were to apply, Cook’s argument fails. Cook cites to Wattigny v. Lambert, 408 So.2d 1126, 1134 (La.Ct.App.1981), which found no distinction between the types of harm caused by defamation; rather, it held that the elements of defamation are no different than for other torts: “fault, causation, and damage.” While Louisiana law may not have a special-damages concept, that does not relieve Cook of his obligation to demonstrate that the factual allegations of his complaint state a claim for defamation per se. He fails in this regard, as he cites no Louisiana law for the proposition that the words “crook” and “dishonest” are actionable per se. The law cited by Cook deals with only the damage element of defamation, not the capacity-to-injure element. As stated, under Mississippi jurisprudence, one who claims to have been defamed must show special damages or that the words used by the slanderer are per se actionable.
¶ 41. Cook has not shown defamation per se under any set of the facts alleged in his complaint. He has failed to show either that the words used are actionable per se or that he suffered special damages. His complaint alleges that he suffered “damage to his reputation and emotional distress,” which are general damages. Further, Cook has asserted no claim that he can sustain an action under Louisiana law. This issue is without merit.
c. Breach of Fiduciary Duty
¶ 42. Next, Cook asserts that the individual defendants owed him a fiduciary duty under the MOPH’s charter and bylaws governing the personal rights of members. He argues that the individual defendants’ breach of their fiduciary duties to him gave rise to a tort action.
¶ 43. Cook cites no law for his assertion that he, as a member of an organization, was owed a fiduciary duty. The only cases cited by Cook show an action for breach of fiduciary duty by a corporation’s shareholders. “Directors and officers of a corporation stand in a fiduciary relationship to the corporation and its stockholders.” Hall v. Dillard, 739 So.2d 383, 386 (¶ 11) (Miss.Ct.App.1999). As we find no duty imposed by law, Cook cannot prove any set of facts to assert a claim for breach of fiduciary duty.

d. Breach of Contract for Violation of the Corporate Charter

¶ 44. Cook alleges that the individual defendants violated the MOPH constitution and bylaws, and this gave rise to an action for breach of contract. In order to show breach of contract, Cook must show (1) the existence of a valid and binding contract; and (2) that the defendants have broken or breached the contract. Bus. Commc’ns, Inc. v. Banks, 90 So.3d 1221, 1224-25 (¶¶ 10-11) (Miss.2012).' “The elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with [the] legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.” Rotenberry v. Hooker, 864 So.2d 266, 270 (¶ 13) (Miss.2003) (quoting Lanier v. State, 635 So.2d 813, 826 (Miss.1994) (overruled on other grounds)).
¶ 45. The actions that Cook argues support his breach-of-contract claim are: violations of the MOPH constitution and bylaws, bad faith, unfairness, fraud, and lack of support in the individual defen *801 dants’ disciplinary action against Cook. However, Cook has failed to allege that, even if the constitution and bylaws were found to be a contract, the individual defendants were parties to the contract. Without a valid contract, no set of facts can support a claim for breach of contract.

e. Civil Conspiracy

¶ 46. The circuit court dismissed Cook’s charge of civil conspiracy for failure to allege a “specific agreement.” Cook asserts this was error because he was not required to prove a specific agreement.
¶ 47. A civil conspiracy occurs when a combination of persons conspire “for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.” Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 786 (¶ 37) (Miss.2004) (quoting Levens v. Campbell, 733 So.2d 753, 761 (¶ 32) (Miss.1999)). “It is elementary that a conspiracy requires an agreement between the co-conspirators.” Id. “Civil conspiracy resulting in damage may give rise to a right of recovery.” Roussel v. Hutton, 638 So.2d 1305, 1315 (Miss.1994).
¶48. On appeal, Cook focuses on the circuit court’s use of the words “specific agreement” when granting the motion to dismiss the complaint. Cook asserts conspiracy requires no specific agreement but, rather, may be proven by circumstantial evidence, such as declarations and conduct of the alleged conspirators. See Brown v. State, 796 So.2d 223, 226 (¶ 10) (Miss.2001); see also Humphrey v. State, 74 So.3d 923, 926 (¶ 10) (Miss.Ct.App.2011). Although the court used the words “specific agreement,” the court made it clear that it was granting the motion to dismiss because the complaint alleged no factual basis for any agreement whatsoever. Our focus is not on whether a “specific agreement” occurred, but, rather, whether Cook has alleged any set of facts upon which any agreement of the defendants to accomplish an unlawful purpose may be found. Since the actions of the individual defendants as alleged in the complaint are not unlawful, Cook cannot prevail on this question.
¶ 49. Cook’s complaint alleges that the “defendants combined for the purpose of accomplishing unlawful purposes and/or lawful purposes unlawfully, as a direct and proximate result of which [the] plaintiff suffered injury and damages.” It is true that Mississippi Rule of Civil Procedure 8 only requires pleadings to contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” However, “[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.” Penn Nat’l Gaming, Inc. v. Ratliff, 954 So.2d 427, 431 (¶6) (Miss.2007). The complaint does not state that an agreement, unlawful or otherwise, was made by the defendants. Our law is clear that “a conspiracy requires an agreement between the co-conspirators.” Gallagher Bassett Servs., 887 So.2d at 786 (¶ 37).
¶ 50. The complaint generally states that the defendants “undertook ... in combination and conspiracy with one another ... to injure ... Col. Cook, to retábate against Col. Cook for whistle-blowing[,] and to destroy Col. Cook’s reputation through unlawful corporate actions and defamation.” However, we cannot find that these statements establish a claim, under any set of facts, for civil conspiracy, as we have found that Cook’s allegations regarding retaliation, whistle-blowing, and defamation do not state a claim upon which relief can be granted. This argument is without merit.

f. Vicarious Liability

¶ 51. Cook argues that the MOPH is vicariously liable for the acts of the indi *802 vidual defendants because it had an interest in hiding the mismanagement of charitable contributions from the public. As we have found Cook’s claims as to the individual defendants regarding breach of fiduciary duty, breach of contract, and civil conspiracy were properly dismissed, the issue of vicarious liability of the MOPH was likewise properly dismissed.

III. Motion to Disqualify Hunton & Williams

¶ 52. Cook argues that Hunton &. Williams should have withdrawn as legal counsel for the defendants because of its former relationship with Cook. Cook alleges that while serving as MOPH national commander, he had a meeting at Hunton & Williams’s law offices with two of its attorneys — Randy Sullivan and Fielding Douthat — and discussed (1) the mismanagement of the MOPH’s Life Membership Fund; (2) the conspiracy against him; (3) the waste and misuse of charitable donations; (4) how Cook would deal with these matters; and (5) the course of action Cook was taking or may take in response to the misconduct. He argues this conversation created a conflict of interest since the law firm may have been privy, to confidential information about the case.
¶ 53. Mississippi Rule of Professional Conduct 1.7 governs conflicts of interest, and it states:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
(1) the representation will not adversely affect the relationship with the 'other client; and
(2) each client has given knowing and informed consent after consultation.
¶ 54. Cook argues that because he met with Sullivan and Douthat, the entire firm of Hunton & Williams should be disqualified under Mississippi Rule of Professional Conduct 1.10(a). Rule 1.10(a) precludes a lawyer associated in a firm from knowingly representing “a client when any one of them practicing alone would be prohibited from doing so[.]”
¶ 55. At all relevant times, Hunton & Williams represented the MOPH; thus, the law firm only had a relationship with Cook as far as he was national commander of the MOPH. The law firm did not represent Cook. The information discussed with Sullivan and Douthat was not confidential. Cook had discussed it with various people, and he had issued the information in a press release. We cannot find that .the circuit court erred in dismissing the motion to disqualify Hunton & Williams.
¶ 56. Cook also argues that because the two attorneys that he met with at Hunton & Williams were potential witnesses in the case, this created a disqualifying conflict of interest for the entire firm.
¶ 57. Regarding whether an attorney may act as a witness, Mississippi Rule of Professional Conduct 3.7 states:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
¶ 58. Cook does not state why it would be necessary for the two attorneys to testify at trial, or what contested testimony they would give. Regardless, as stated above, the information that Cook told the attorneys was not confidential, as it was *803 issued in a press release and told to national media outlets.
¶ 59. This issue is without merit.
IV. Cross-Appeal of Individual Defendants — Personal Jurisdiction
¶ 60. The individual defendants argue the circuit court erred in denying their motion to dismiss for lack of personal jurisdiction. As we affirm the circuit court’s judgment dismissing the individual defendants, there is no need to address'this issue.
¶ 61. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT APPEAL. THIS APPEAL IS DISMISSED AS TO SERVICE FOUNDATION INC. THE CROSS-APPEAL IS DISMISSED AS MOOT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
LEE, C.J., BARNES, ISHEE, ' ROBERTS, MAXWELL AND JAMES, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON AND FAIR, JJ., NOT PARTICIPATING.

. The individual defendants. are: Dennis A. Wallot, James Durkin, Jeffrey A. Roy, James M. Sims, Boyd L. Barclay, Delbert E. "Bulldog” Turner, John H. Agenbroad, Alvin W. Flyr, William A. Wroolie, Alfred J. Silvano, Frank A. Athanason, R. Louis Spinelli, Frederick A. Taylor Jr., Daniel J. Murphy, Clayton D. Jones, John P. Leonard, and John and Jane Does 1-25.

. The bylaws were amended on August 19, 2009, to allow for the prosecution of griev-anees and/or discipline against a MOPH national commander in office.

. The complaint listed the following defendants as agents or employees of the Service Foundation: Wallot, Barclay, Roy, Durkin, Wroolie, Silvano, Spinelli, Athanason, and Taylor.
Regarding vicarious liability of the Service Foundation, the complaint states:
Each of these individual defendants committed his unlawful acts ... in his representative capacity [and] within the scope of his *796 authority on behalf [of] defendant Service Foundation.
[[Image here]]
At all material times, defendant Service Foundation ha[d] liability for the acts and omissions of each of the other defendants who were co-conspirators[.]

. Cook amended his complaint once after it was filed to add three defendants. No other changes were made.

. Mississippi Rule of Civil Procedure 12(b) states: "If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, ... the motion is granted, leave to amend shall be granted in accordance with [Mississippi] Rule [of Civil Procedure] 15(a).” Rule 15(a) states that "leave to amend shall be granted when justice so requires upon conditions and within time as determined by the court, provided matters outside the pleadings are not presented at the hearing on the motion.” Cook filed no such motion.

. Five categories of words have been recognized as slander per se:
(1) Words imputing the guilt or commission of some criminal offense involving moral turpitude and infamous punishment.
(2) Words imputing the existence of some contagious disease. (3) Words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties thereof. (4) Words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct.of a profession, trade
*799 or business; and.... (5)[W]ords imputing to a female a want of chastity.
Speed, 787 So.2d at 632 (¶ 27) (quoting W.T. Farley, Iñc. v. Bufkin, 159 Miss. 350, 355, 132 So. 86, 87 (1931)).